Cullen et al., Appellees, v. Milligan et al., Appellants.

[Cite as *Cullen v. Milligan* (1991), 61 Ohio St.3d 352.]

(No. 90–1540—Submitted June 5, 1991—Decided August 14, 1991.)

354

*Campbell, Hornbeck, Chilcoat & Veatch* and *Daniel F. Ryan,* for appellees.

*Emens, Hurd, Kegler & Ritter Co., L.P.A., Melvin D. Weinstein* and *Gene W. Holliker,* for appellants.

DOUGLAS, J.

## I

The first issue presented for our consideration is one of first impression for this court. This issue concerns R.C. 1701.831, Ohio's Control Share Acquisition Act. Specifically, we are asked to determine whether Cullen, in acquiring 2,480 of Fuller's shares of Gammatronix, made a "control share acquisition" and, as such, came within the parameters of R.C. 1701.831.

R.C. 1701.831 is applicable to "issuing public corporation[s]" within Ohio unless the corporation's articles or regulations provide that control share acquisitions of the corporation's shares are exempt. R.C. 1701.831(A). Former R.C. 1701.01(Y), at the time pertinent herein, defined an "issuing public corporation" as a domestic corporation with fifty or more shareholders that has a principal place of business, principal executive offices, or substantial assets in Ohio and to which no valid close corporation agreement exists. It is undisputed that Gammatronix is an "issuing public corporation."

R.C. 1701.01(Z)(1) defines "control share acquisition." The statute provides, in relevant part, that:

" * * * [T]he acquisition, directly or indirectly, by any person of shares of an issuing public corporation that, when added to all other shares of the issuing public corporation in respect of which such person may exercise or direct the exercise of voting power as provided in this division, would entitle such person, immediately after such acquisition, directly or indirectly, alone or with others, to exercise or direct the exercise of the voting power of the issuing public corporation in the election of directors within any of the following ranges of such voting power:

"(a) One-fifth or more but less than one-third of such voting power;

"(b) One-third or more but less than a majority of such voting power;

"(c) A majority or more of such voting power.

" * * * "

R.C. 1701.01(Z)(1) sets forth three thresholds: one-fifth, one-third, and a majority of the voting power. Hence, if a "person" acquires shares "directly or indirectly, alone or with others" of an "issuing public corporation," and the acquired shares, when added to shares the person already owns of the corporation causes the person to reach or cross any of the threshold levels

specified in R.C. 1701.01(Z)(1), a "control share acquisition" has occurred. Before such an acquisition can be made, the acquiring person must obtain "prior authorization of the shareholders of such corporation." R.C. 1701.-831(A). The proper procedures to follow in obtaining shareholder approval are provided in sections (B), (C) and (D) of R.C. 1701.831.

Notwithstanding the fact that the Cullen and Fuller agreement was voided and the shares were reconveyed to Fuller, Cullen did, indeed, make a "control share acquisition." Thus, Cullen fell within the scope of R.C. 1701.831.

The agreement between Cullen and Fuller discloses that Fuller had, in fact, transferred 2,480 shares of Gammatronix stock to Cullen, that the shares had been "sold" by Fuller to Cullen, and that Fuller had "received" $116,000 from Cullen as "payment for said shares." When Cullen acquired Fuller's 2,480 shares, Cullen's ownership in Gammatronix rose from 790 shares (5.2 percent) to 3,270 shares or 21.7 percent of the 15,055.7 authorized and issued shares of Gammatronix. By acquiring Fuller's shares, Cullen, pursuant to R.C. 1701.-01(Z)(1)(a) (acquisition of one-fifth or more but less than one-third of the voting power) made a "control share acquisition."

Furthermore, we reject appellees' argument that the terms of the Cullen and Fuller agreement are evidence that appellees could not have violated R.C. 1701.831. In support of their position, appellees point to the agreement which essentially provides that if anyone brings an action contesting the transfer of Fuller's shares to Cullen as being in violation of R.C. 1701.831, then the sale would be voided and the shares reconveyed to Fuller.

Appellees' argument is flawed because the agreement also stated that even if litigation were initiated and the shares reconveyed, Fuller would retain the purchase price of $116,000, and as long as the shares would be held by Fuller, Cullen would retain an irrevocable proxy. By obtaining an irrevocable proxy in Fuller's shares, Cullen was entitled to "exercise or direct the exercise of the voting power." Therefore, pursuant to R.C. 1701.01(Z)(1)(a), a "control share acquisition" occurred, requiring Cullen to follow the mandates of R.C. 1701.-831.

In addition to our finding that Cullen, by his own actions, made a "control share acquisition," we also find that Cullen, Foster and Williams, acting in concert in agreeing to share certain costs associated with Cullen's acquisition of Fuller's shares, as well as sharing an "equitable interest" in those shares, made a control share acquisition. Prior to Cullen acquiring Fuller's shares, Cullen, Foster and Williams owned 6,170 shares or approximately 41 percent of Gammatronix's 15,055.7 outstanding shares. After adding Fuller's 2,480 shares, Cullen's, Foster's and Williams's total equaled 8,650 shares or 57.4 percent of authorized and issued shares of Gammatronix. Thus, the holdings

of Cullen, Foster and Williams, when combined with the purchase from Fuller, caused Cullen, Foster and Williams to cross the threshold level of R.C. 1701.01(Z)(1)(c). Upon reaching this level (there being a "control share acquisition" and a majority of corporate voting power), Cullen, Foster and Williams were subject to the requirements of R.C. 1701.831.

Accordingly, absent language in a corporation's articles of incorporation or code of regulations exempting control share acquisitions, any control share acquisition of an Ohio issuing public corporation must, pursuant to R.C. 1701.831, have been authorized by the shareholders of the corporation prior to the acquisition taking place.

## II

The second issue we must address is whether the court of appeals erred in finding that the employee stock option plan had not been properly approved by a majority of the board as required under the Gammatronix code of regulations. The court of appeals found the trial court erred in determining that, pursuant to R.C. 1701.95(C), Milligan and Cullen had cast their votes in favor of the stock option plan even though they actually abstained from voting.

R.C. 1701.95(C) states that:

"A director who is present at a meeting of the directors or a committee of the directors at which action on any matter is authorized or taken and who has not voted for or against the action shall be presumed to have voted for the action unless his written dissent from the action is filed, either during the meeting or within a reasonable time after the adjournment of the meeting, with the person acting as secretary of the meeting or with the secretary of the corporation."

It is appellants' position that the court of appeals unduly restricted the application of R.C. 1701.95(C). Appellants argue that the language "any matter" not only includes loans, dividends and the distribution of corporate assets as provided in section (A) of R.C. 1701.95, but it also includes stock options issued in accordance with R.C. 1701.17.[3]

Appellants' arguments are not persuasive. By accepting these arguments, we would be required to view the language "any matter" in a vacuum and

---

3. Generally speaking, R.C. 1701.17 provides that directors may carry out plans for the offering and sale of shares, or the granting of options to purchase shares, to employees. The plan may involve unissued shares, treasury shares or shares to be purchased by the corporation. Shares subject to pre-emptive rights can only be offered or sold when they are released from pre-emptive rights. In the case at bar, the shares offered to Milligan and Hicks were not subject to pre-emptive rights. See R.C. 1701.16 and 1701.15(A)(1) and (4).

disassociate it from the rest of R.C. 1701.95. This would be contrary to the basic tenets of statutory construction requiring that intent be derived from the four corners of the statute. *Black–Clawson Co. v. Evatt* (1941), 139 Ohio St. 100, 104, 22 O.O. 63, 65, 38 N.E.2d 403, 405; *Humphrys v. Winous Co.* (1956), 165 Ohio St. 45, 49, 59 O.O. 65, 67, 133 N.E.2d 780, 782–783.

In general terms, R.C. 1701.95 was enacted to subject a director to joint and several liability to the corporation if the director votes for, or assents to, the making or payment of a loan, dividend or distribution of a corporate asset that is either contrary to law, or contrary to the corporation's articles of incorporation. R.C. 1701.95(A)(1), (2) and (3). The statute addresses only three general areas: loans, dividends and distribution of corporate assets. The statute is silent with regard to actions taken by directors offering stock option plans. The statute does not mention R.C. 1701.17.

Following the sections of R.C. 1701.95 in sequence, the purpose of R.C. 1701.95(C) is clear. Section (C) was promulgated to prevent directors from dodging liability to the corporation by refusing to vote on actions prohibited by R.C. 1701.95(A). Hence, if a director who was present at a meeting of the directors, or of a committee of directors that authorized an action prohibited by R.C. 1701.95(A) and, for whatever reason, the director did not vote either for or against the action, a statutory presumption arises that the director voted in favor of the unlawful loan, dividend, or distribution of a corporate asset unless the director filed a written dissent during the meeting or within a reasonable time thereafter.

We believe that the language "any matter," as referenced in R.C. 1701.-95(C), refers to those actions prohibited by R.C. 1701.95(A). For this reason, the trial court erroneously applied R.C. 1701.95(C), finding that Milligan and Cullen voted in favor of the stock option plan. Accordingly, we find that the court of appeals was correct in holding that the trial court erred in failing to grant appellees an injunction prohibiting Milligan and Hicks from acquiring additional shares under the stock option plan.

Appellants also argue that Milligan and Hicks should not be prohibited from exercising the options because employee stock options granted pursuant to R.C. 1701.17 are exempt from R.C. 1701.831. Stated differently, it is appellants' position that directors may grant a stock option to an employee, and the employee may exercise the option without adhering to R.C. 1701.831, even though exercise of the option would provide the employee with a "control share acquisition" of the corporation's voting power within the meaning of R.C. 1701.01(Z)(1).

Since we have decided that a majority of the board did not properly approve the stock option plan, it is unnecessary to decide whether R.C. 1701.831 was

intended to apply to stock option acquisitions approved under R.C. 1701.17. However, given the fact that the issue is before us, and for the purpose of guidance to the bench and bar, we believe that employee stock option acquisitions that affect a "control share" of the corporation's voting power, within the meaning of R.C. 1701.01(Z), are subject to the mandates of R.C. 1701.831.

The General Assembly set forth its intention with respect to "control share acquisitions" in R.C. 1701.832. R.C. 1701.832 is an unusual statute and consists entirely of "findings" by the General Assembly relating to tender offers, the accumulations of large blocks of stock, and a public interest in allowing shareholders "a reasonable opportunity to express their views" upon proposed shifts in the corporation's control. See 1 Seaver, Ohio Corporation Law (1989) 191. The acquisition of a block of voting shares of a corporation, whether acquired on the open market or privately, often results "in shifts of effective corporate control" accompanied by changes "in the ongoing business of the corporation and a concomitant fundamental change in the nature of the shareholders' investment in it. Thus[,] the potential that such changes in corporate circumstances will occur gives rise to basic issues concerning the internal affairs of the corporation typical of those arising in mergers, consolidations, combinations, and majority share acquisitions. *The form of the transaction* in which such issues arise should not alter basic corporate mechanisms by which such issues are presented and resolved." (Emphasis added.) R.C. 1701.832(A)(2).

The language employed by the General Assembly is inclusive. It is clear to us that the exercise of employee stock options that result in a "control share acquisition" was intended to be within the scope of R.C. 1701.831.[4]

III

The final issue before us is whether Milligan improperly denied Cullen's, Fuller's, Foster's and Williams's request, as holders of more than fifty percent of Gammatronix's stock, to call a special shareholders' meeting. The underlying purpose of the appellees' request was threefold: to consider and vote on Ousia's offers to purchase the company's assets; to increase the number of directors on the board to eleven; and "[t]o fill all vacancies in the [b]oard of [d]irectors." Whether Milligan wrongfully refused to call a special sharehold-

---

4. If the stock options had been properly granted by a majority of the board and exercised by Milligan and Hicks, Milligan, acting alone in exercising the options, and Milligan and Hicks acting in concert, would have violated R.C. 1701.831.

ers' meeting hinges upon an interpretation of applicable sections of the Gammatronix code of regulations.[5] See R.C. 1701.39, 1701.40 and 1701.56.

We agree with appellants' contention that the authority given to shareholders to elect directors is contained in section 1.1 of the Gammatronix code of regulations. This section is clear and provides that the election of directors may only take place at the annual meeting held in January. The section further provides that if an election of directors is not held at the annual meeting, then, and only then, can an election of directors be held at a special shareholders' meeting. Therefore, because shareholders can only elect directors at the annual meeting, or if no election takes place, at a special meeting, shareholders are limited, pursuant to section 1.1 of the code, to creating and electing additional directors only at the annual meeting.

---

5. Annual and special meetings of shareholders are governed under Article 1 of the Code of Regulations of Gammatronix, Inc. Sections 1.1 and 1.2 of Article 1 provided, in relevant part, that:

"§ 1.1 *Annual Meeting.*

"*The annual meeting of the shareholders, for the purpose of electing directors* and transacting such other business as may come before the meeting, shall be held in the month of January of each year on such day and at such hour as may be designated by the Board of Directors * * *. If for any reason the election of directors is not held at the annual meeting or any adjournment thereof, the board of directors shall cause the election to be held at a special shareholders' meeting as soon thereafter as is convenient. At any such special meeting, the shareholders may elect directors and transact any other business with the same effect as at an annual meeting." (Emphasis added.)

"§ 1.2 *Special Meetings.*

"A special meeting of the shareholders may be called by the chairman of the board, if any, or the president, or by a majority of the directors acting with or without a meeting, or by the holders of record of fifty percent (50%) of all the shares outstanding at the time of the calling of such meeting and then entitled to be voted at a shareholders' meeting. Upon delivery to the president or secretary of a request in writing for a shareholders' meeting by any persons entitled to call such meeting, it shall be the duty of the officer to whom the request is delivered to give notice to the shareholders of such meeting. Said request shall specify the objects or purposes and the date and hour for such meeting. * * * "

Article 2 of the code is entitled "Board of Directors." Sections 2.2 and 2.7 of Article 2 provided, in pertinent part, that:

"§ 2.2 *Number and Qualifications.*

"Consistent with the provisions of § 1701.56 of the Ohio Revised Code, the number of directors, none of whom need be shareholders of the company, shall be not less than three, provided that where all shares of the corporation are owned of record by one or two shareholders, the number of directors may be less than three but not less than the number of shareholders. The number of directors may be fixed or changed at a meeting of the shareholders called for the purpose of electing directors at which a quorum is present. * * * "

"§ 2.7 *Vacancies.*

"A vacancy in the board of directors may be filled by a majority vote of the remaining directors, even though they are less than a quorum, until the shareholders hold an election to fill the vacancy. Shareholders entitled to elect directors may elect a director to fill any vacancy

With respect to vacancies on the board, appellants contend that if a vacancy occurs during the year, shareholders are precluded from filling that vacancy until the next annual meeting. Appellants reach this conclusion by reading section 2.7 of the code of regulations in conjunction with section 1.1.

Appellants' argument is not well-taken. By its clear terms, section 2.7 of the code establishes that if a vacancy on the board should arise during the year, the vacancy may be filled by a majority vote of the remaining directors, *until* the shareholders hold an election to fill the vacancy "at any shareholders' meeting called for that purpose." Section 2.7 does not reference section 1.1, nor does it contain the language "annual meeting." Thus, we believe section 2.7 of the code permits shareholders to request a special meeting to fill any vacancies that may have occurred during the year.

Furthermore, we believe Milligan improperly denied Cullen's, Fuller's, Foster's and Williams's request to call a meeting with respect to Ousia's offer to purchase the company's assets. The regulations do not restrict such a request. Rather, section 1.2 of the code of regulations seems to support the convening of a meeting when a majority of the shareholders make such a request.

Based on the foregoing, Milligan incorrectly concluded that appellees did not have a right to call a special shareholders' meeting. Even though Cullen, Fuller, Foster and Williams were not entitled to call a meeting for the sole purpose of increasing the number of directors, they did have a right to request a meeting to consider and vote on Ousia's offer to purchase Gammatronix's assets, and to fill any vacancies on the board of directors that may have existed.

## IV

In summary, we find that both appellees' and appellants' conduct, in attempting to gain control of Gammatronix, was contrary to law and/or contrary to the Gammatronix code of regulations. Cullen, Foster and Williams violated R.C. 1701.831. Further, the stock option plan benefiting Milligan and Hicks was not properly authorized by the majority of the directors. Finally, Milligan acted improperly in refusing to call a special shareholders' meeting. Accordingly, we agree with the court of appeals that " * * * the parties should be restored to their original positions with respect to their holdings in Gammatronix."

---

in the board (whether or not the vacancy has previously been temporarily filled by the remaining directors) at any shareholders' meeting called for that purpose."

The judgment of the court of appeals is affirmed. This cause is remanded to the trial court for proceedings consistent with this opinion.

*Judgment affirmed*
*and cause remanded.*

MOYER, C.J., SWEENEY, HOLMES, WRIGHT, H. BROWN and RESNICK, JJ., concur.